FILED
CLERK, U.S. DISTRICT COURT
1/16/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ___ASI___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>ERIC CHASE SAAVEDRA,<br><br>　　　　Defendant. | No. 2:25-cr-00035-DSF<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 241: Conspiracy Against Rights; 26 U.S.C. § 7206(1): Making and Subscribing to a False Tax Return; 18 U.S.C. § 924(d)(1), 26 U.S.C. § 7301 and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

　　　The United States Attorney charges:

INTRODUCTORY ALLEGATIONS

　　　At times relevant to this Information:

　　　1.　The Los Angeles County Sheriff's Department ("LASD") was a law enforcement agency within the Central District of California. Among other responsibilities, the LASD provided municipal police services within Los Angeles County, California, through its thousands of sworn deputies.

2.   Defendant ERIC CHASE SAAVEDREA, LASD Deputy 5, LASD Deputy 6, LASD Deputy 7, and LASD Deputy 8 were sworn law enforcement officers employed by the LASD.  As LASD deputies, defendant SAAVEDRA, LASD Deputy 5, LASD Deputy 6, LASD Deputy 7, and LASD Deputy 8 were subject to an oath of duty and rules of conduct.  This oath and these rules prohibited LASD personnel from using their law enforcement status and related equipment for personal use or for non-legitimate law enforcement purposes.

3.   Defendant SAAVEDRA was a detective assigned to LASD's Operation Safe Streets Bureau.  Defendant SAAVEDRA also served as a federal task force officer assigned to the U.S. Marshals Service's Pacific Southwest Regional Fugitive Task Force.

4.   By virtue of his positions, defendant SAAVEDRA had access to sensitive law enforcement databases and other confidential databases from which he could obtain personally identifiable information ("PII") regarding individuals, including addresses, registered vehicles, and criminal backgrounds.  Per LASD policy, defendant SAAVEDRA knew he was to use these law enforcement databases for official law enforcement purposes only.

5.   Defendant SAAVEDRA knew and understood that the Constitution and laws of the United States protect the right to be free from unreasonable searches and seizures and the right to be free from deprivation of property without due process of law by one acting under color of law.

6.   Defendant SAAVEDRA owned and operated a company called Saavedra & Associates LLC ("Saavedra & Associates") that provided private security services for clients and often employed active LASD deputies and law enforcement officers.  Saavedra & Associates was

registered with the Internal Revenue Service ("IRS") as an S corporation.

7. Defendant SAAVEDRA controlled three bank accounts opened in the name of Saavedra & Associates, including two accounts at Bank of America and one account at JPMorgan Chase (the "Saavedra & Associates Bank Accounts").

8. Adam Iza, also known as ("aka") "The Godfather," aka "Ahmed Faiq," aka "Diego," aka "Diego Facebook," aka "Tony Brambilla," aka "Leo" ("Iza"), was engaged in fraudulent marketing and cryptocurrency schemes and resided in Los Angeles County and Orange County, California, within the Central District of California.

9. Defendant SAAVEDRA and Saavedra & Associates derived substantial gross income from security-related services, including from services provided to Iza, and used the Saavedra & Associates Bank Accounts to receive such income.

10. Iza and Victim E.Z. were engaged in a dispute involving a laptop computer believed to contain over $100 million in cryptocurrency accessible through multiple passcodes and private keys.

11. The IRS was an agency of the United States Department of Treasury responsible for administering the tax laws of the United States and collecting taxes owed to the United States.

12. IRS Form 1040, U.S. Individual Income Tax Return ("Form 1040"), was a form generally used by individual U.S. taxpayers to file annual income tax returns.

13. These Introductory Allegations are incorporated into each count of this Information.

COUNT ONE

[18 U.S.C. § 241]

A.  OBJECT OF THE CONSPIRACY

14.  Beginning on a date unknown and continuing through in or around March 2022, in Los Angeles County and Orange County, within the Central District of California, and elsewhere, defendant ERIC CHASE SAAVEDRA, and others known and unknown to the United States Attorney, conspired and agreed with each other to knowingly and intentionally injure, oppress, threaten, and intimidate persons of the State of California, namely, Victim R.C., Victim E.Z., and Victim D.D., in the free exercise and enjoyment of rights secured to them by the Constitution and laws of the United States, that is, the right to be free from unreasonable searches and seizures and the right to be free from deprivation of property without due process of law by one acting under color of law.

15.  More specifically, defendant SAAVEDRA, Iza, and others known and unknown to the United States Attorney, would enter into a scheme to intimidate, harass, and threaten individuals with whom Iza had disputes and to obtain property, including by using confidential information and court-authorized search warrants obtained by LASD deputies in their official capacities.

B.  MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

16.  The object of the conspiracy was to be accomplished, in substance, as follows:

   a.  Iza would hire active LASD deputies, through defendant SAAVEDRA and/or Saavedra & Associates, to act as Iza's personal

4

bodyguards, accompanying him twenty-four hours per day and seven days per week.

    b.   Iza would pay large sums of money for the LASD deputies' services, including through cash payments and wire transfers to defendant SAAVEDRA and/or Saavedra & Associates.

    c.   The LASD deputies often would carry firearms and/or brandish their LASD badges while accompanying Iza.

    d.   Iza would inform the LASD deputies about individuals with whom he had personal and/or monetary disputes and obtain the LASD deputies' assistance in gathering information about those individuals; obtaining property from them; and/or retaliating against them.

    e.   The LASD deputies would use their powers as sworn law enforcement officers to improperly access sensitive law enforcement databases and other confidential databases to obtain PII about individuals, including addresses, registered vehicles, and criminal backgrounds.

    f.   The LASD deputies would use their powers as sworn law enforcement officers to improperly obtain court-authorized search warrants related to individuals with whom Iza had disputes, including warrants to search individuals' residences and to obtain location information associated with those individuals.

    g.   Iza, the LASD deputies, and their associates would use confidential information that the LASD deputies obtained in their official capacities to locate, intimidate, harass, threaten, and extort individuals with whom Iza had disputes and/or their associates.

h.  Iza, the LASD deputies, and their associates would plan to steal, attempt to steal, and steal property from individuals with whom Iza had disputes and/or their associates.

i.  Iza, the LASD deputies, and their associates would intimidate, harass, and threaten individuals with whom Iza had disputes and/or their associates, including by threatening violence and by using confidential information that the LASD deputies obtained in their official capacities.

j.  Iza, the LASD deputies, and other associates would conceal their activities by communicating using encrypted communications applications, including Telegram, to avoid law enforcement detection.

C.  <u>OVERT ACTS</u>

17.  On or about the following dates, in furtherance of the conspiracy, and to accomplish the object of the conspiracy, defendant SAAVEDRA and Iza, and others known and unknown to the United States Attorney, committed and caused to be committed various overt acts within the Central District of California, and elsewhere, including the following:

**(1)  *IZA Paid Defendant SAAVEDRA and/or Saavedra & Associates Large Sums to Provide Security Services for Him Through Active LASD Deputies***

<u>Overt Act No. 1</u>:  In or around August 2021, Iza engaged Saavedra & Associates to provide security services for him.

<u>Overt Act No. 2</u>:  Beginning in or around August 2021, defendant SAAVEDRA staffed teams of at least two security guards, which he selected from a roster of approximately 20-25 active LASD deputies and several non-law enforcement officers, to accompany Iza twenty-four hours per day and seven days per week, typically in

6

twelve-hour shifts; the LASD deputies, including defendant SAAVEDRA, typically carried firearms and sometimes brandished their LASD badges while working for Iza.

<u>Overt Act No. 3</u>:  Beginning in or around August 2021, Iza paid defendant SAAVEDRA and/or Saavedra & Associates approximately $100,000 per month for security-related services through a combination of wire transfers and cash payments from bank accounts associated with Iza, including bank accounts for Zort, Inc., Dream Agency, Inc., and Rise Agency, Inc.

<u>Overt Act No. 4</u>:  Beginning in or around August 2021, defendant SAAVEDRA paid the LASD deputies and non-law enforcement officers who worked for Iza under the umbrella of Saavedra & Associates approximately $750 for each shift they worked, typically in cash.

<u>Overt Act No. 5</u>:  Beginning in or around August 2021, Iza, defendant SAAVEDRA, and the other LASD deputies working for Iza communicated with one another using the encrypted messaging application Telegram, among other reasons, to avoid detection by law enforcement.

<u>Overt Act No. 6</u>:  In or around August 2021, defendant SAAVEDRA learned that two LASD deputies working for Iza, LASD Deputy 5 and LASD Deputy 6, had recently held a person at gunpoint in Iza's residence after which Iza forced that person to transfer money to Iza.

**(2)  *Defendant SAAVEDRA and Other LASD Deputies Used Their Positions to Obtain PII for IZA***

<u>Overt Act No. 7</u>:  Beginning in or around fall 2021, defendant SAAVEDRA regularly used his LASD credentials to access sensitive law

7

enforcement databases and confidential databases to obtain PII for Iza, including PII for individuals with whom IZA had personal and/or business disputes, their associates, and their family members.

Overt Act No. 8:  Beginning in or around fall 2021, defendant SAAVEDRA sometimes tasked LASD deputies working for Saavedra & Associates to secure PII for Iza.

Overt Act No. 9:  Beginning in or around fall 2021 and continuing into 2022, defendant SAAVEDRA and other LASD deputies supplied Iza with PII relating to Victim R.C., Victim E.Z, Victim D.D., and their associates and their family members, among others.

**(3) *Defendant SAAVEDRA Helped Secure a Warrant to Search Victim R.C.'s Residence Under False Pretenses***

Overt Act No. 10:  In or around September 2021, Iza introduced defendant SAAVEDRA to Iza's associate, Individual 1, at a party at Iza's mansion in Bel Air and said that Iza's associate had information for defendant.

Overt Act No. 11:  In or around September 2021, during the party at Iza's residence, Individual 1 told defendant SAAVEDRA, in Iza's presence, that: Individual 1 knew a significant drug dealer whom Individual 1 identified as Victim R.C.; Victim R.C. currently sold cocaine and fentanyl; and Victim R.C. stored illegal drugs at Victim R.C.'s residence in the Los Angeles area.

Overt Act No. 12:  In or around September 2021, during the party at Iza's residence, defendant SAAVEDRA had a private conversation with Individual 1, and Individual 1 repeated similar statements to defendant.

Overt Act No. 13:  On September 24, 2021, defendant SAAVEDRA contacted a LASD narcotics detective and relayed the information he

received from Individual 1 knowing that it likely would cause law enforcement to investigate Victim R.C., including by securing a warrant to search Victim R.C.'s residence.

Overt Act No. 14:   On September 24, 2021, during defendant SAAVEDRA's conversation with the narcotics detective, defendant SAAVEDRA deliberately concealed important information from the narcotics detective, namely, that: (a) defendant SAAVEDRA received the information he provided through a meeting facilitated by Iza, defendant SAAVEDRA's private client; (b) Iza was paying defendant SAAVEDRA approximately $100,000 per month via Saavedra & Associates; and (c) LASD Deputy 5 and LASD Deputy 6 recently had held a person at gunpoint at Iza's residence, after which Iza forced that person to send money to Iza.

Overt Act No. 15:   In or around September 2021 through October 2021, defendant SAAVEDRA and Iza spoke multiple times about a narcotics search warrant related to Victim R.C.

Overt Act No. 16:   In or around October 2021, the narcotics detective informed defendant SAAVEDRA that law enforcement had obtained and executed a warrant to search Victim R.C.'s residence and that officers did not find any illegal drugs inside the residence, which information defendant SAAVEDRA later relayed to Iza.

***(4)   Defendant SAAVEDRA Falsified Information in a Search Warrant Affidavit to Secure a Warrant to Locate Victim E.Z.'s Phone***

Overt Act No. 17:   In or around late 2021, Iza told defendant SAAVEDRA that Iza wanted to obtain a laptop containing a large amount of cryptocurrency from Victim E.Z. so that Iza could access and convert the cryptocurrency.

9

<u>Overt Act No. 18</u>:  In or around late 2021, Iza informed defendant SAAVEDRA that he believed Victim E.Z.'s associate, Victim D.D., may have been in possession of the laptop.

<u>Overt Act No. 19</u>:  On December 15, 2021, defendant SAAVEDRA, LASD Deputy 7, Iza, and one of Iza's associates, Individual 2, traveled to Victim D.D.'s residence in Orange County to confront Victim D.D.

<u>Overt Act No. 20</u>:  On December 15, 2021, while outside Victim D.D.'s residence, defendant SAAVEDRA identified himself as a law enforcement officer, displayed his badge, and told Victim D.D. that a stolen laptop was pinging at Victim D.D.'s residence.

<u>Overt Act No. 21</u>:  On December 15, 2021, Victim D.D. refused to open the door and denied possessing a stolen laptop; soon thereafter, the local police arrived at Victim D.D.'s residence, spoke with defendant SAAVEDRA and Victim D.D., and stated there was nothing for the police to do, after which defendant SAAVEDRA and his group departed.

<u>Overt Act No. 22</u>:  In or around late 2021 into early 2022, defendant SAAVEDRA and Iza continued to discuss Victim E.Z. and the laptop with cryptocurrency on it, including Iza's frustration with the lack of progress made by a private investigator whom Iza had paid large sums of money to locate Victim E.Z. and the laptop.

<u>Overt Act No. 23</u>:  In or around late 2021 or early 2022, defendant SAAVEDRA and Iza discussed and agreed that defendant SAAVEDRA would use his position as a law enforcement officer to obtain a search warrant for GPS location information associated with Victim E.Z.'s telephone number to enable them to locate Victim E.Z. and the laptop.

<u>Overt Act No. 24</u>:  On January 6, 2022, defendant SAAVEDRA applied for and obtained a search warrant under false pretenses from a Los Angeles County Superior Court judge authorizing law enforcement officers to obtain GPS location information associated with several telephone numbers, including Victim E.Z.'s telephone number.

<u>Overt Act No. 25</u>:  On January 6, 2022, in the sworn affidavit supporting the search warrant application, defendant SAAVEDRA falsely stated that Victim E.Z.'s telephone number was associated with a suspect in a firearms investigation.

<u>Overt Act No. 26</u>:  In or around early January 2022, soon after securing the illegally obtained search warrant for GPS location information associated with Victim E.Z.'s phone, defendant SAAVEDRA began receiving pings from the service provider for Victim E.Z.'s phone, which provided the approximate location of Victim E.Z.'s phone.

<u>Overt Act No. 27</u>:  In or around early January 2022, defendant SAAVEDRA shared the pings with Iza.

<u>Overt Act No. 28</u>:  In or around early January 2022, defendant SAAVEDRA traveled to a neighborhood in Los Angeles where the pings showed Victim E.Z.'s phone was located and saw Victim E.Z. outside a residence in an apartment complex.

<u>Overt Act No. 29</u>:  In or around early January 2022, defendant SAAVEDRA notified Iza that he had located Victim E.Z., and defendant SAAVEDRA and Iza proceeded to surveil the apartment complex and residence where defendant SAAVEDRA had seen Victim E.Z.

<u>Overt Act No. 30</u>:  In or around January 2022, defendant SAAVEDRA learned that Iza had provided Victim E.Z.'s address to others, including to the private investigator whom Iza had engaged to

locate Victim E.Z. and the laptop; thereafter, the private investigator and his team surveilled Victim E.Z. for several months.

### (5) Defendant SAAVEDRA Created a Fake Search Warrant to Scare and Secure Client 1 for Saavedra & Associates

Overt Act No. 31:  In or around 2022, Iza told defendant SAAVEDRA that: one of IZA's associates in the Los Angeles area, Client 1, who was involved in stealing large amounts of cryptocurrency, was interested in obtaining private security; defendant SAAVEDRA and/or Saavedra & Associates could secure Client 1's business if Client 1 believed that Client 1 had something to worry about; and Iza wanted to scare Client 1 by making Client 1 believe that law enforcement was investigating Client 1.

Overt Act No. 32:  In or around 2022, defendant SAAVEDRA and Iza discussed and agreed that defendant SAAVEDRA would prepare a fake search warrant relating to Client 1 and stating that Client 1 was under investigation.

Overt Act No. 33:  In or around 2022, defendant SAAVEDRA created a fake search warrant using an official LASD template that named Client 1 and referenced, among other things, cryptocurrency and digital devices.

Overt Act No. 34:  In or around 2022, after completing the fake search warrant, defendant SAAVEDRA directed another LASD deputy, LASD Deputy 8, to print a copy of it and deliver it to Iza so that Iza could present it to Client 1.

Overt Act No. 35:  In or around 2022, after LASD Deputy 8 delivered the fake search warrant to Iza, Client 1 engaged Saavedra & Associates to provide security for Client 1 and paid defendant

SAAVEDRA and/or Saavedra & Associates for security-related services through Iza, who acted as an intermediary.

COUNT TWO

[26 U.S.C. § 7206(1)]

On or about April 18, 2022, in San Bernardino County, within the Central District of California, and elsewhere, defendant ERIC CHASE SAAVEDRA willfully made and subscribed to a materially false U.S. Individual Income Tax Return, Form 1040, for the calendar year 2021, which was verified by a written declaration from defendant SAAVEDRA that it was made under the penalties of perjury, and which defendant SAAVEDRA filed or caused to be filed with the Internal Revenue Service, knowing the tax return was not true and correct as to every material matter contained therein, in that defendant SAAVEDRA knew that he failed to report on the tax return approximately $373,146 in income.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count One of this Information.

2. Any defendant so convicted shall forfeit to the United States of America the following:

   (a) All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

   (b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the convicted defendant shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[26 U.S.C. § 7301 and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 26, United States Code, 7301, and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count Two of this Information.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

  a. Any property sold or removed by the defendant in fraud of the internal revenue laws, or with design to avoid payment of such tax, or which was removed, deposited, or concealed, with intent to defraud the United States of such tax or any part thereof;

  b. All property manufactured into property of a kind subject to tax for the purpose of selling such taxable property in fraud of the internal revenue laws, or with design to evade the payment of such tax;

  c. All property whatsoever, in the place or building, or any yard or enclosure, where the property described in subsection (a) or (b) is found, or which is intended to be used in the making of property described in subsection (a), with intent to defraud the United States of tax or any part thereof, on the property described in subsection (a);

  d. All property used as a container for, or which shall have contained, property described in subsection (a) or (b);

  e. Any property (including aircraft, vehicles, vessels, or draft animals) used to transport or for the deposit or concealment

16

of property described in subsection (a) or (b), or any property used to transport or for the deposit or concealment of property which is intended to be used in the making or packaging of property described in subsection (a); and

        f.    To the extent that such property is not available for forfeiture, a sum of money equal to the total value of the property described in this paragraph.

    3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

///
///

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

E. MARTIN ESTRADA
United States Attorney

*/s/ Lindsey Greer Dotson*

LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division

CASSIE D. PALMER
Assistant United States Attorney
Chief, Public Corruption and
Civil Rights Section

DANIEL J. O'BRIEN
Assistant United States Attorney
Senior Litigation Counsel
Public Corruption and
Civil Rights Section

J. JAMARI BUXTON
Assistant United States Attorney
Public Corruption and
Civil Rights Section

MAXWELL COLL
Assistant United States Attorney
Cyber and Intellectual Property
Crimes Section