1  E. MARTIN ESTRADA
   United States Attorney
2  LINDSEY GREER DOTSON
   Assistant United States Attorney
3  Chief, Criminal Division
   DANIEL J. O'BRIEN (Cal. Bar No. 141720)
4  J. JAMARI BUXTON (Cal. Bar No. 342364)
   Assistant United States Attorneys
5  Public Corruption and Civil Rights Section
   MAXWELL COLL (Cal. Bar No. 312651)
6  Assistant United States Attorney
   Cyber and Intellectual Property Crimes Section
7       1500 United States Courthouse
        312 North Spring Street
8       Los Angeles, California 90012
        Telephone: (213) 894-2468/3519/1785
9       Facsimile: (213) 894-0141
        E-mail:    daniel.obrien@usdoj.gov
10                 jamari.buxton@usdoj.gov
                   maxwell.coll@usdoj.gov
11
   Attorneys for Plaintiff
12 UNITED STATES OF AMERICA

**F I L E D**
CLERK, U.S. DISTRICT COURT
1/16/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ ASI _____ DEPUTY

13               UNITED STATES DISTRICT COURT

14           FOR THE CENTRAL DISTRICT OF CALIFORNIA

15 UNITED STATES OF AMERICA,        No. CR 2:25-cr-00035-DSF

16         Plaintiff,               PLEA AGREEMENT FOR DEFENDANT
                                    ERIC CHASE SAAVEDRA
17              v.

18 ERIC CHASE SAAVEDRA,

19         Defendant.

20

21      1.   This constitutes the plea agreement between ERIC CHASE

22 SAAVEDRA ("defendant") and the United States Attorney's Office for

23 the Central District of California (the "USAO") in the investigation

24 of certain acts committed by defendant in furtherance of a conspiracy

25 against rights under color of law.  This agreement is limited to the

26 USAO and cannot bind any other federal, state, local, or foreign

27 prosecuting, enforcement, administrative, or regulatory authorities.

28

1                        DEFENDANT'S OBLIGATIONS

2          2.   Defendant agrees to:

3          a.   Give up the right to indictment by a grand jury and,

4   at the earliest opportunity requested by the USAO and provided by the

5   Court, appear and plead guilty to a two-count information in the form

6   attached to this agreement as Exhibit B or a substantially similar

7   form, which charges defendant with conspiracy against rights, in

8   violation of 18 U.S.C. § 241 (Count One), and false subscription to a

9   tax return, in violation of 26 U.S.C. § 7206(1) (Count Two).

10         b.   Not contest the Factual Basis agreed to in this

11  agreement.

12         c.   Abide by all agreements regarding sentencing contained

13  in this agreement.

14         d.   Appear for all court appearances, surrender as ordered

15  for service of sentence, obey all conditions of any bond, and obey

16  any other ongoing court order in this matter.

17         e.   Not commit any crime; however, offenses that would be

18  excluded for sentencing purposes under United States Sentencing

19  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

20  within the scope of this agreement.

21         f.   Be truthful at all times with the United States

22  Probation and Pretrial Services Office and the Court.

23         g.   Pay the applicable special assessments at or before

24  the time of sentencing unless defendant has demonstrated a lack of

25  ability to pay such assessments.

26         3.   Defendant further agrees:

27         a.   To forfeit all right, title, and interest in and to

28  any and all monies, properties, and/or assets of any kind, derived

from or acquired as a result of, or used to facilitate the commission
of, or involved in the illegal activity to which defendant is
pleading guilty, specifically including, but not limited to, the
following:

        i.     5 Louis Vuitton wallets

        ii.    32 Louis Vuitton bags

        iii.   1 Louis Vuitton fanny pack

        iv.    1 Goyard tote

        v.     2 Bottega Veneta bags

        vi.    8 Gucci bags

        vii.   1 YSL bag

        viii.  1 Celine or Chloe bag

        ix.    1 Gucci wallet

        x.     2 pairs of Hermes sandals

        xi.    1 Valentino bag

        xii.   27 pairs of Gucci shoes

        xiii.  5 pairs of Louis Vuitton shoes

        xiv.   2 Pairs of Chanel shoes

        xv.    1 pair of Bottega heels

        xvi.   4 pairs of Prada shoes

        xvii.  2 pairs of YSL shoes

        xviii. 5 pairs of Louboutin heels

        xix.   3 pairs of Valentino shoes

        xx.    3 Louis Vuitton sunglasses

        xxi.   1 Gucci sunglasses

        xxii.  1 Chanel sunglasses

        xxiii. 1 Chanel bag; and

        xxiv.  A money counting machine.

b.   To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Assets and to the forfeiture of the assets.

c.   To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Assets, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Assets.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Assets on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Assets.

e.   Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Assets.

f.   Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

g.   To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

h.   To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

i.   That forfeiture of Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

4.   The parties further agree that, pursuant to the Asset Forfeiture Policy Manual (2023), Chapter 14, Sec. II.B. and 28 C.F.R. Part 9.8, upon a determination by the government that it can make the required representations set forth therein, and if requested by defendant, the government will submit a restoration request to the Money Laundering and Asset Recovery Section of the Department of Justice, seeking approval for any assets forfeited to be restored to the victims in this case, which may, in turn, satisfy in full or part any restitution order.  Defendant has acknowledged that the Attorney General, or his designee, has the sole discretion to approve or deny the restoration request.

5.   With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Assets in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment.  Defendant acknowledges that forfeiture of the Forfeitable Assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal

1  Procedure 11(b)(1)(J), at the time the Court accepts defendant's

2  guilty pleas.

3      6.    Defendant admits that defendant received unreported income

4  of $373,146 for the year 2021.  Defendant agrees that:

5      a.    Prior to sentencing or prior to June 30, 2025,

6  whichever comes first, defendant will: (1) if requested to do so by

7  the Internal Revenue Service ("IRS"), file amended returns for the

8  years subject to the above admissions, correctly reporting unreported

9  income and correcting improper deductions and credits; (2) if

10  requested to do so by the IRS, provide the IRS with information

11  regarding the years covered by the returns; (3) pay all additional

12  taxes and all penalties and interest assessed by the IRS on the basis

13  of the returns; and (4) pay all additional taxes and all penalties

14  and interest thereafter determined by the IRS to be owing as a result

15  of any computational error(s).

16      b.    Nothing in this agreement forecloses or limits the

17  ability of the IRS to examine and make adjustments to defendant's

18  returns after they are filed.

19      c.    If defendant files amended returns, defendant will

20  not, after filing the returns, file any claim for refund of taxes,

21  penalties, or interest for amounts attributable to the returns filed

22  in connection with this plea agreement.

23      d.    Defendant is liable for the tax deficiencies resulting

24  from the failure to report this income and the fraud penalty imposed

25  by the Internal Revenue Code, 26 U.S.C. § 6663, on the

26  understatements of tax liability for the year 2021.

27      e.    Defendant gives up any and all objections that could

28  be asserted to the Examination Division of the Internal Revenue

Service receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

f.    Defendant will work in good faith with the IRS to enter into a closing agreement for the year 2021, which will be consistent with this plea agreement and permit the IRS to assess and collect the deficiencies in tax liabilities for the tax year 2021 (the "Closing Agreement").  Defendant agrees, pursuant to the Closing Agreement, that the IRS may assess and collect the fraud penalty for each year and statutory interest, on the tax liabilities, as provided by law.

g.    Within 30 days from the filing of this plea agreement, defendant will sign the Closing Agreement with the IRS, permitting the IRS to assess and collect the total sum of $104,000 for the defendant's tax year 2021, which comprises the tax liabilities, as well as assess and collect the civil fraud penalty and statutory interest, on the tax liabilities, as provided by law.

<u>THE USAO'S OBLIGATIONS</u>

7.    The USAO agrees to:

a.    Not contest the Factual Basis agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to

U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

NATURE OF THE OFFENSES

8.    Defendant understands that for defendant to be guilty of the crime charged in Count One of the information, that is, conspiracy against rights, in violation of Title 18, United States Code, Section 241, the following must be true: (1) there was an agreement between two or more persons to injure, oppress, threaten, or intimidate a person in the free exercise or enjoyment of his or her rights secured by the Constitution and laws of the United States; here, the right to be free from unreasonable searches and seizures and the right to be free from deprivation of property without due process of law by one acting under color of law; (2) defendant knowingly became a member of the conspiracy with the intent to further the conspiracy; and (3) the victim was present in the State of California.

9.    Defendant understands that for defendant to be guilty of the crime charged in Count Two of the information, that is, false subscription to a tax return, in violation of Title 26, United States Code, Section 7206(1), the following must be true: (1) defendant made and signed a tax return for the year 2021 that he knew contained false information as to a material matter; (2) the return contained a written declaration that it was being signed subject to the penalties of perjury; and (3) in filing the false tax return, the defendant acted willfully.  A matter is material if it had a natural tendency to influence, or was capable of influencing, the decisions or activities of the IRS.  A defendant acts willfully when defendant

knows that federal tax law imposed a duty on defendant and defendant intentionally and voluntarily violated that duty.

<u>PENALTIES AND RESTITUTION</u>

10.  Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 241 (Count One) is: 10 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

11.  Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 26, United States Code, Section 7206(1) is: three years' imprisonment; a one-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

12.  Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 13 years' imprisonment; a three-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

13.  Defendant understands that he will be required to pay full restitution to the victim(s) of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.

In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts and charges.  With respect to Count Two, the parties stipulate that the appropriate amount of restitution should be the tax deficiencies plus penalties and interest set forth in the Closing Agreement referenced in paragraph 5.  The parties have no agreement as to the applicable amount of restitution relating to Count One.  The parties recognize and agree that the restitution amount could change based on facts that come to the attention of the parties prior to sentencing.  The parties agree that generally such restitution payments are tax deductible against income, pursuant to 26 U.S.C. § 165(c), in the year the restitution payments are made; however, defendant understands that defendant is solely responsible for ensuring that his tax filings are accurate and in compliance with all legal requirements.

14.  Defendant understands and agrees that the Court: (a) may order defendant to pay restitution in the form of any additional taxes, interest, and penalties that defendant owes to the United States based upon the counts of conviction and any relevant conduct; and (b) must order defendant to pay the costs of prosecution, which may be in addition to the statutory maximum fine stated above.

15.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies

by which to satisfy defendant's payment of the full financial
obligation, including referral to the Treasury Offset Program.

16.  Defendant understands that supervised release is a period
of time following imprisonment during which defendant will be subject
to various restrictions and requirements.  Defendant understands that
if defendant violates one or more of the conditions of any supervised
release imposed, defendant may be returned to prison for all or part
of the term of supervised release authorized by statute for the
offense that resulted in the term of supervised release, which could
result in defendant serving a total term of imprisonment greater than
the statutory maximum stated above.

17.  Defendant understands that, by pleading guilty, defendant
may be giving up valuable government benefits and valuable civic
rights, such as the right to vote, the right to possess a firearm,
the right to hold office, and the right to serve on a jury.
Defendant understands that he is pleading guilty to a felony and that
it is a federal crime for a convicted felon to possess a firearm or
ammunition.  Defendant understands that the convictions in this case
may also subject defendant to various other collateral consequences,
including but not limited to revocation of probation, parole, or
supervised release in another case and suspension or revocation of a
professional license.  Defendant understands that unanticipated
collateral consequences will not serve as grounds to withdraw
defendant's guilty pleas.

18.  Defendant and his counsel have discussed the fact that, and
defendant understands that, if defendant is not a United States
citizen, the convictions in this case make it practically inevitable
and a virtual certainty that defendant will be removed or deported

11

from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

19.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the Factual Basis provided in Exhibit A hereto and agree that this Factual Basis is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 21 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

<u>SENTENCING FACTORS</u>

20.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the

Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

21.    Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

**Count One (18 U.S.C. § 241)**

| | | |
|---|---|---|
| Base Offense Level: | 12 | U.S.S.G. § 2H1.1(a)(2) |
| Defendant was a public official at the time of the offense; offense was committed under color of law: | 6 | U.S.S.G. § 2H1.1(b)(1) |

**Count Two (26 U.S.C. § 7206(1))**

| | | |
|---|---|---|
| Base Offense Level: | 16 | U.S.S.G. § 2T4.1(F) |

**Combined Offense Level (U.S.S.G. § 3D1.4)**

Count One Group (offense level 18) = 1 unit

Count Two Group (offense level 16) = 1 unit

Total units: 2

Combined offense level:    20 (offense level 18 plus 2 levels)


Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

22.    Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

23.    Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

24.    Defendant understands that by pleading guilty, defendant gives up the following rights:

a.    The right to persist in a plea of not guilty.

b.    The right to a speedy and public trial by jury.

c.    The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

25.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the Factual Basis provided herein is insufficient to support defendant's pleas of guilty.

<u>WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK</u>

26.  Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 30 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) the amount and terms of any restitution order; (e) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

27.   Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, that newly discovered evidence purportedly supports defendant's innocence, and any and all claims that the Factual Basis provided herein is insufficient to support defendant's pleas of guilty.

28.   The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 24 months, the USAO gives up its right to appeal any portion of the sentence.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

29.   Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then the USAO will be relieved of all of its obligations under this agreement.

<u>EFFECTIVE DATE OF AGREEMENT</u>

30.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

1

<u>BREACH OF AGREEMENT</u>

2    31.  Defendant agrees that if defendant, at any time after the

3    signature of this agreement and execution of all required

4    certifications by defendant, defendant's counsel, and an Assistant

5    United States Attorney, knowingly violates or fails to perform any of

6    defendant's obligations under this agreement ("a breach"), the USAO

7    may declare this agreement breached.  All of defendant's obligations

8    are material, a single breach of this agreement is sufficient for the

9    USAO to declare a breach, and defendant shall not be deemed to have

10   cured a breach without the express agreement of the USAO in writing.

11   If the USAO declares this agreement breached, and the Court finds

12   such a breach to have occurred, then: (a) if defendant has previously

13   entered guilty pleas pursuant to this agreement, defendant will not

14   be able to withdraw the guilty pleas, and (b) the USAO will be

15   relieved of all its obligations under this agreement.

16   <u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

17   <u>OFFICE NOT PARTIES</u>

18   32.  Defendant understands that the Court and the United States

19   Probation and Pretrial Services Office are not parties to this

20   agreement and need not accept any of the USAO's sentencing

21   recommendations or the parties' agreements to the Factual Basis or

22   sentencing factors.

23   33.  Defendant understands that both defendant and the USAO are

24   free to: (a) supplement the Factual Basis by supplying relevant

25   information to the United States Probation and Pretrial Services

26   Office and the Court, (b) correct any and all factual misstatements

27   relating to the Court's Sentencing Guidelines calculations and

28   determination of sentence, and (c) argue on appeal and collateral

17

review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 21 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the agreed upon Factual Basis in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the Factual Basis agreed to in this agreement.

34.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

35.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

1      PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2          36.    The parties agree that this agreement will be considered

3   part of the record of defendant's guilty plea hearing as if the

4   entire agreement had been read into the record of the proceeding.

5   AGREED AND ACCEPTED

6   UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
7   CALIFORNIA

8   E. MARTIN ESTRADA
    United States Attorney
9

10  _____          1/13/25
                                        _____
    J. JAMARI BUXTON                    Date
11  DANIEL J. O'BRIEN
    MAXWELL COLL
12  Assistant United States Attorneys

13

14  _____          1/7/25
                                        _____
15  ERIC CHASE SAAVEDRA                 Date
    Defendant
16

17  _____          1/7/25
                                        _____
18  BRIAN GURWITZ                       Date
    Attorney for Defendant Eric Chase
19  Saavedra

20

21

22

23

24

25

26

27

28

                            19

1

<u>CERTIFICATION OF DEFENDANT</u>

2      I have read this agreement in its entirety.  I have had enough

3  time to review and consider this agreement, and I have carefully and

4  thoroughly discussed every part of it with my attorney.  I understand

5  the terms of this agreement, and I voluntarily agree to those terms.

6  I have discussed the evidence with my attorney, and my attorney has

7  advised me of my rights, of possible pretrial motions that might be

8  filed, of possible defenses that might be asserted either prior to or

9  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10  of relevant Sentencing Guidelines provisions, and of the consequences

11  of entering into this agreement.  No promises, inducements, or

12  representations of any kind have been made to me other than those

13  contained in this agreement.  No one has threatened or forced me in

14  any way to enter into this agreement.  I am satisfied with the

15  representation of my attorney in this matter, and I am pleading

16  guilty because I am guilty of the charges and wish to take advantage

17  of the promises set forth in this agreement, and not for any other

18  reason.

19

20  _____        _____1/7/25_____

    ERIC CHASE SAAVEDRA                    Date

    Defendant

21

22

23

24

25

26

27

28

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Eric Chase Saavedra's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____          1/7/25
BRIAN GURWITZ                             _____
Attorney for Defendant Eric Chase         Date
Saavedra

1

## **EXHIBIT A**

2

FACTUAL BASIS

3 **I.    Defendant and Other LASD Deputies Began Working for Adam Iza**

4        1.    At all times relevant to this Factual Basis, defendant ERIC

5 CHASE SAAVEDREA ("defendant") was a sworn law enforcement officer

6 employed by the Los Angeles County Sheriff's Department ("LASD").

7 Defendant was a detective assigned to LASD's Operation Safe Streets

8 Bureau.  Defendant also served as a federal task force officer

9 assigned to the U.S. Marshals Service's Pacific Southwest Regional

10 Fugitive Task Force.  As a LASD deputy, defendant was subject to an

11 oath of duty and rules of conduct.  This oath and these rules

12 prohibited LASD personnel from using their law enforcement status and

13 related equipment for personal use or for non-legitimate law

14 enforcement purposes.

15        2.    By virtue of these positions, defendant had access to

16 sensitive law enforcement databases and other confidential databases

17 from which he could obtain personally identifiable information

18 ("PII") regarding individuals, including addresses, registered

19 vehicles, and criminal backgrounds.  Per LASD policy, defendant was

20 to use these law enforcement databases for official law enforcement

21 purposes only.

22        3.    In or around 2018, when defendant was assigned to LASD's

23 Lakewood Station, defendant got a tattoo on his left ankle of the

24 unofficial logo of the Lakewood Station, which was a spade with the

25 number 13 inside of it.  Defendant got the tattoo after a panel of

26 tattooed Lakewood Station members voted to approve defendant's

27 tattoo.  Defendant was the 55th person to get that tattoo.

28

4.   In or around August 2021, defendant formed a company called Saavedra & Associates LLC ("Saavedra & Associates").  Saavedra & Associates provided private security services for clients and often employed active LASD deputies and law enforcement officers.

5.   In or around August 2021, one or more LASD deputies who had recently worked security for a wealthy individual named Adam Iza ("Iza") at Iza's mansion in Bel Air told defendant that Iza was interested in procuring security-related services from defendant. Defendant met with Iza soon thereafter, and Iza engaged Saavedra & Associates to provide security services for him that same month.

6.   Although Iza's security-related needs varied, defendant typically staffed teams of at least two security guards to accompany Iza twenty-four hours per day and seven days per week.  The teams of security guards typically worked in twelve-hour shifts.  Defendant recruited approximately 20 to 25 LASD deputies, as well as at least one former LASD deputy and a sibling of a LASD deputy, to work the shifts.  Defendant occasionally worked the shifts himself.  The LASD deputies, including defendant, typically carried firearms while working for Iza and sometimes displayed their LASD badges.

7.   Iza typically paid defendant and/or Saavedra & Associates approximately $100,000 per month for security-related services.  Iza made the payments through a combination of wire transfers and cash payments from bank accounts associated with Iza, including bank accounts for Zort, Inc., Dream Agency, Inc., and Rise Agency, Inc.

8.   Defendant, in turn, paid the LASD deputies and non-law enforcement officers who worked for Iza under the umbrella of Saavedra & Associates approximately $750 for each shift they worked.

Defendant typically paid the security guards in cash, although he occasionally made wire transfers to them.

9.    Defendant and Saavedra & Associates provided security-related services for Iza from in or around August 2021 until in or around March 2022, when Iza left the United States for Dubai. Defendant and Saavedra & Associates resumed providing security-related services for Iza when Iza returned to the Los Angeles area in or around July 2024.  These services continued until Iza's arrest by federal agents in or around September 2024.

10.    During the time defendant worked for Iza, defendant, Iza, and the other LASD deputies working for Iza communicated with one another using the encrypted messaging application Telegram.  They did so, among other reasons, to avoid detection by law enforcement.

11.    At all times relevant to this Factual Basis, defendant knew and understood that the Constitution and laws of the United States protect the right to be free from unreasonable searches and seizures and the right to be free from deprivation of property without due process of law by one acting under color of law.

**II.    Defendant Accessed Sensitive and Confidential Databases to Supply PII to Iza in Violation of LASD Policy**

12.    Beginning in or around fall 2021, defendant regularly used his LASD credentials to access sensitive law enforcement databases and confidential databases to obtain PII for Iza, his private client. This included PII regarding people with whom Iza had personal and/or business disputes, their associates, and their family members. Defendant sometimes tasked LASD deputies working for Saavedra & Associates to secure PII for Iza, as well.

13.   Defendant knew that he was not authorized under LASD rules to access or use such PII for non-law enforcement matters or to share it with private clients.  Defendant did so because he wanted to impress Iza with his access to law enforcement information and to continue to receive lucrative business from Iza.

14.   Defendant and other LASD deputies supplied Iza with PII relating to Victim R.C., Victim E.Z, Victim D.D., their associates, and their family members, among others.  Although defendant did not always know how Iza intended to use the PII, defendant generally understood that Iza could use the PII, among other things, to locate individuals and/or property Iza wanted to take from people, and potentially to intimidate, threaten, and/or harass people and to commit crimes.

**III. Defendant Helped Secure a Warrant to Search Victim R.C.'s Residence Under False Pretenses**

15.   In or around September 2021, Iza introduced defendant to Iza's associate, Individual 1, at a party at Iza's mansion in Bel Air and said that Iza's associate had information for defendant.  In Iza's presence, Individual 1 told defendant that Individual 1 knew a significant drug dealer whom Individual 1 identified as Victim R.C. Individual 1 told defendant that Victim R.C. currently sold cocaine and fentanyl and stored illegal drugs at Victim R.C.'s residence in the Los Angeles area.  Later that day, defendant had a private conversation with Individual 1 during which Individual 1 repeated similar statements to defendant.

16.   At the time Individual 1 made the statements about Victim R.C. to defendant, defendant was aware that two LASD deputies working for Iza, LASD Deputy 5 and LASD Deputy 6, had recently held a person

at gunpoint in Iza's residence after which Iza forced that person to transfer money to Iza.  Defendant did not know at the time that Victim R.C. was the person the two deputies held at gunpoint.

17.  In the weeks after Iza introduced defendant to Individual 1, Iza asked defendant multiple times about a narcotics search warrant related to Victim R.C.

18.  On or about September 24, 2021, defendant contacted a LASD narcotics detective and relayed the information he received from Individual 1.  Defendant knew that supplying the information to the narcotics detective likely would cause law enforcement to investigate Victim R.C., including by securing a warrant to search Victim R.C.'s residence.  Defendant contacted the narcotics detective because he wanted to please Iza and to maintain Iza's business.

19.  Defendant deliberately concealed important information from the narcotics detective, namely, that: (a) defendant received the information through a meeting facilitated by Iza, defendant's private client; (b) Iza was paying defendant approximately $100,000 per month via Saavedra & Associates; and (c) LASD Deputy 5 and LASD Deputy 6 had recently held a person at gunpoint in Iza's residence, after which Iza forced that person to send money to Iza.  Defendant knew that the information he provided to the narcotics detective was incomplete and misleading and that any warrant based upon that information would likely be unlawful.

20.  Sometime after on or about October 12, 2021, the narcotics detective informed defendant that law enforcement had obtained a warrant to search Victim R.C.'s residence and that officers did not find any illegal drugs inside the residence.  Defendant later relayed this information to Iza.

**IV.  Defendant Falsified Information in a Search Warrant Affidavit to Secure a Warrant to Locate Victim E.Z.'s Phone**

21.  In or around late 2021, defendant learned about a dispute between Iza and Victim E.Z. involving a laptop computer believed to contain over $100 million in cryptocurrency.  Iza told defendant that he wanted to get the laptop so that he could access and convert the cryptocurrency on it.  Iza initially told defendant the laptop was stolen.

22.  In or around late 2021, Iza informed defendant that he believed Victim E.Z.'s associate, Victim D.D., may be in possession of the laptop.  On or about December 15, 2021, defendant, another LASD deputy, LASD Deputy 7, Iza, and one of Iza's associates, Individual 2, traveled to Victim D.D.'s residence in Orange County to confront Victim D.D.  Victim D.D. refused to open the door and spoke to the group through a window.  Defendant identified himself as a law enforcement officer, displayed his badge, and told Victim D.D. that a stolen laptop was pinging at Victim D.D.'s residence.  Victim D.D. denied possessing a stolen laptop, and someone contacted the police, who arrived soon after.  The police spoke with Victim D.D. and with defendant and determined that there was nothing for the police to do. Defendant, LASD Deputy 7, Iza, and Individual 2 eventually departed.

23.  Iza and defendant continued to discuss Victim E.Z. and the laptop at various points between in or around late 2021 and early 2022.  Iza told defendant that he had engaged a private investigator and had expended large sums of money to locate Victim E.Z. and the laptop, without success.  Iza told defendant that he was frustrated by the lack of progress made by the private investigator.

24.   During one such conversation, defendant volunteered that he could use his position as a law enforcement officer to obtain a search warrant for GPS location information associated with Victim E.Z.'s phone.  Defendant told Iza that the warrant would enable them to locate Victim E.Z. and the laptop.  Defendant volunteered to secure a warrant for Victim E.Z.'s phone because defendant wanted to please Iza and to maintain Iza's business.

25.   On or about January 6, 2022, defendant applied for and obtained a search warrant from a Los Angeles County Superior Court judge authorizing law enforcement officers to obtain GPS location information associated with several telephone numbers, including Victim E.Z.'s number.  In the sworn affidavit supporting the application, defendant falsely stated that Victim E.Z.'s telephone number was associated with a suspect in a firearms investigation.

26.   Defendant began receiving pings from the service provider for Victim E.Z.'s phone soon after the judge authorized the illegally-obtained warrant.  Defendant shared the pings identifying the approximate location of Victim E.Z.'s phone with Iza.  Defendant thereafter set out to locate Victim E.Z. using the pings from the service provider.

27.   In or around early January 2022, defendant traveled to a neighborhood in Los Angeles where GPS location information showed Victim E.Z.'s phone was located.  While searching the area, defendant spotted Victim E.Z. outside a residence in an apartment complex. Defendant notified Iza that he found Victim E.Z., and the two proceeded to surveil the apartment complex and residence where defendant had seen Victim E.Z.  Iza later provided Victim E.Z.'s address to others, including to the private investigator Iza had

engaged to locate Victim E.Z. and the laptop.  The private

investigator and his team then surveilled Victim E.Z. for several

months.

**V.    Defendant Created a Fake Search Warrant to Scare and Help Secure
       Client 1 for Saavedra & Associates**

28.  In or around 2022, Iza informed defendant that one of Iza's

associates in the Los Angeles area, Client 1, who was involved in

stealing large amounts of cryptocurrency, was interested in obtaining

private security.  Iza told defendant that defendant and/or Saavedra

& Associates could secure Client 1's business if Client 1 believed

that Client 1 had something to worry about.  Iza told defendant that

Iza wanted to scare Client 1 and make Client 1 believe that law

enforcement was investigating Client 1.  Iza asked defendant to

prepare a fake search warrant naming Client 1 and stating that Client

1 was under investigation.  Defendant agreed.

29.  At Iza's direction, defendant created a fake search warrant

using an official LASD template to make it appear legitimate.

Defendant tailored the fake search warrant to scare Client 1 and to

make Client 1 believe that Client 1 was under investigation,

referencing, among other things, cryptocurrency and digital devices.

When he completed the fake search warrant, defendant directed another

LASD deputy, LASD Deputy 8, to print a copy of it and deliver it to

Iza so that Iza could present it to Client 1.

30.  Soon thereafter, Client 1 engaged Saavedra & Associates to

provide security for Client 1.  Client 1 paid defendant and/or

Saavedra & Associates for security-related services through Iza, who

acted as an intermediary.

## VI.  Defendant Received Unreported Income and Subscribed to False Tax Return

31.  Defendant and Saavedra & Associates provided security-related services and received significant income during the year 2021 that defendant failed to declare on his individual tax return. Specifically, during 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant received unreported income of $373,146.  On or about April 18, 2022, in San Bernardino County, within the Central District of California, and elsewhere, defendant made and signed a U.S. Individual Income Tax Return, Form 1040, for the calendar year 2021, that he knew contained false information as to material matters; the return contained a written declaration that the tax returns were being signed subject to the penalties of perjury; and defendant intentionally and voluntarily violated his known duty to obey federal tax laws.  As a result of such additional taxable income, there was additional income tax of approximately $104,000 due and owing to the United States of America for the calendar year 2021.

**EXHIBIT B**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>ERIC CHASE SAAVEDRA,<br><br>          Defendant. | No.<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 241: Conspiracy Against Rights; 26 U.S.C. § 7206(1): Making and Subscribing to a False Tax Return; 18 U.S.C. § 924(d)(1), 26 U.S.C. § 7301 and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The United States Attorney charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.    The Los Angeles County Sheriff's Department ("LASD") was a law enforcement agency within the Central District of California. Among other responsibilities, the LASD provided municipal police

services within Los Angeles County, California, through its thousands
of sworn deputies.

2.    Defendant ERIC CHASE SAAVEDREA, LASD Deputy 5, LASD Deputy
6, LASD Deputy 7, and LASD Deputy 8 were sworn law enforcement
officers employed by the LASD.  As LASD deputies, defendant SAAVEDRA,
LASD Deputy 5, LASD Deputy 6, LASD Deputy 7, and LASD Deputy 8 were
subject to an oath of duty and rules of conduct.  This oath and these
rules prohibited LASD personnel from using their law enforcement
status and related equipment for personal use or for non-legitimate
law enforcement purposes.

3.    Defendant SAAVEDRA was a detective assigned to LASD's
Operation Safe Streets Bureau.  Defendant SAAVEDRA also served as a
federal task force officer assigned to the U.S. Marshals Service's
Pacific Southwest Regional Fugitive Task Force.

4.    By virtue of his positions, defendant SAAVEDRA had access
to sensitive law enforcement databases and other confidential
databases from which he could obtain personally identifiable
information ("PII") regarding individuals, including addresses,
registered vehicles, and criminal backgrounds.  Per LASD policy,
defendant SAAVEDRA knew he was to use these law enforcement databases
for official law enforcement purposes only.

5.    Defendant SAAVEDRA knew and understood that the
Constitution and laws of the United States protect the right to be
free from unreasonable searches and seizures and the right to be free
from deprivation of property without due process of law by one acting
under color of law.

6.    Defendant SAAVEDRA owned and operated a company called
Saavedra & Associates LLC ("Saavedra & Associates") that provided

2

private security services for clients and often employed active LASD deputies and law enforcement officers.  Saavedra & Associates was registered with the Internal Revenue Service ("IRS") as an S corporation.

7.  Defendant SAAVEDRA controlled three bank accounts opened in the name of Saavedra & Associates, including two accounts at Bank of America and one account at JPMorgan Chase (the "Saavedra & Associates Bank Accounts").

8.  Adam Iza, also known as ("aka") "The Godfather," aka "Ahmed Faiq," aka "Diego," aka "Diego Facebook," aka "Tony Brambilla," aka "Leo" ("Iza"), was engaged in fraudulent marketing and cryptocurrency schemes and resided in Los Angeles County and Orange County, California, within the Central District of California.

9.  Defendant SAAVEDRA and Saavedra & Associates derived substantial gross income from security-related services, including for Iza, and used the Saavedra & Associates Bank Accounts to receive such income.

10.  Iza and Victim E.Z. were engaged in a dispute involving a laptop computer believed to contain over $100 million in cryptocurrency accessible through multiple passcodes and private keys.

11.  The IRS was an agency of the United States Department of Treasury responsible for administering the tax laws of the United States and collecting taxes owed to the United States.

12.  IRS Form 1040, U.S. Individual Income Tax Return ("Form 1040"), was a form generally used by individual U.S. taxpayers to file annual income tax returns.

3

13.  These Introductory Allegations are incorporated into each count of this Information.

1                            COUNT ONE

2                       [18 U.S.C. § 241]

3 A.   OBJECT OF THE CONSPIRACY

4      14.  Beginning on a date unknown and continuing through in or

5 around March 2022, in Los Angeles County and Orange County, within

6 the Central District of California, and elsewhere, defendant ERIC

7 CHASE SAAVEDRA, and others known and unknown to the United States

8 Attorney, conspired and agreed with each other to knowingly and

9 intentionally injure, oppress, threaten, and intimidate persons of

10 the State of California, namely, Victim R.C., Victim E.Z., and Victim

11 D.D., in the free exercise and enjoyment of rights secured to them by

12 the Constitution and laws of the United States, that is, the right to

13 be free from unreasonable searches and seizures and the right to be

14 free from deprivation of property without due process of law by one

15 acting under color of law.

16      15.  More specifically, defendant SAAVEDRA, Iza, and others

17 known and unknown to the United States Attorney, would enter into a

18 scheme to intimidate, harass, and threaten individuals with whom Iza

19 had disputes and to obtain property, including by using confidential

20 information and court-authorized search warrants obtained by LASD

21 deputies in their official capacities.

22 B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE

23      ACCOMPLISHED

24      16.  The object of the conspiracy was to be accomplished, in

25 substance, as follows:

26         a.   Iza would hire active LASD deputies, through defendant

27 SAAVEDRA and/or Saavedra & Associates, to act as Iza's personal

28

bodyguards, accompanying him 24 hours per day and seven days per week.

b.   Iza would pay large sums of money for the LASD deputies' services, including through cash payments and wire transfers to defendant SAAVEDRA and/or Saavedra & Associates.

c.   The LASD deputies often would carry firearms and/or brandish their LASD badges while accompanying Iza.

d.   Iza would inform the LASD deputies about individuals with whom he had personal and/or monetary disputes and obtain the LASD deputies' assistance in gathering information about those individuals; obtaining property from them; and/or retaliating against them.

e.   The LASD deputies would use their powers as sworn law enforcement officers to improperly access sensitive law enforcement databases and other confidential databases to obtain PII about individuals, including addresses, registered vehicles, and criminal backgrounds.

f.   The LASD deputies would use their powers as sworn law enforcement officers to improperly obtain court-authorized search warrants related to individuals with whom defendant Iza had disputes, including warrants to search individuals' residences and to obtain location information associated with those individuals.

g.   Iza, the LASD deputies, and their associates would use confidential information that the LASD deputies obtained in their official capacities to locate, intimidate, harass, threaten, and extort individuals with whom defendant Iza had disputes and/or their associates.

h.    Iza, the LASD deputies, and their associates would plan to steal, attempt to steal, and steal property from individuals with whom defendant Iza had disputes and/or their associates.

i.    Iza, the LASD deputies, and their associates would intimidate, harass, and threaten individuals with whom defendant Iza had disputes and/or their associates, including by threatening violence and by using confidential information that the LASD deputies obtained in their official capacities.

j.    Iza and the LASD deputies and other associates would conceal their activities by communicating using encrypted communications applications, including Telegram, to avoid law enforcement detection.

C.    OVERT ACTS

On or about the following dates, in furtherance of the conspiracy, and to accomplish the object of the conspiracy, defendant SAAVEDRA and Iza, and others known and unknown to the United States Attorney, committed and caused to be committed various overt acts within the Central District of California, and elsewhere, including the following:

**(1)    *IZA Paid Defendant SAAVEDRA and/or Saavedra & Associates Large Sums to Provide Security Services for Him Through Active LASD Deputies***

Overt Act No. 1:    In or around August 2021, Iza engaged Saavedra & Associates to provide security services for him.

Overt Act No. 2:    Beginning in or around August 2021, defendant SAAVEDRA staffed teams of at least two security guards, which he selected from a roster of approximately 20-25 active LASD deputies and several non-law enforcement officers, to accompany Iza

7

twenty-four hours per day and seven days per week, typically in twelve-hour shifts; the LASD deputies, including defendant SAAVEDRA, typically carried firearms and sometimes brandished their LASD badges while working for Iza.

Overt Act No. 3:    Beginning in around August 2021, Iza paid defendant SAAVEDRA and/or Saavedra & Associates approximately $100,000 per month for security-related services through a combination of wire transfers and cash payments from bank accounts associated with Iza, including bank accounts for Zort, Inc., Dream Agency, Inc., and Rise Agency, Inc.

Overt Act No. 4:    Beginning in or around August 2021, defendant SAAVEDRA paid the LASD deputies and non-law enforcement officers who worked for Iza under the umbrella of Saavedra & Associates approximately $750 for each shift they worked, typically in cash.

Overt Act No. 5:    Beginning in or around August 2021, Iza, defendant SAAVEDRA, and the other LASD deputies working for Iza communicated with one another using the encrypted messaging application Telegram, among other reasons, to avoid detection by law enforcement.

Overt Act No. 6:    In or around August 2021, defendant SAAVEDRA learned that two LASD deputies working for Iza, LASD Deputy 5 and LASD Deputy 6, had recently held a person at gunpoint in IZA's residence after which IZA forced that person to transfer money to IZA.

*(2)    Defendant SAAVEDRA and Other LASD Deputies Used Their Positions to Obtain PII for IZA*

Overt Act No. 7:    Beginning in or around fall 2021, defendant SAAVEDRA regularly used his LASD credentials to access sensitive law enforcement databases and confidential databases to obtain PII for Iza, including PII for individuals with whom IZA had personal and/or business disputes, their associates, and their family members.

Overt Act No. 8:    Beginning in or around fall 2021, defendant SAAVEDRA sometimes tasked LASD deputies working for Saavedra & Associates to secure PII for Iza.

Overt Act No. 9:    Beginning in or around fall 2021 and continuing into 2022, defendant SAAVEDRA and other LASD deputies supplied Iza with PII relating to Victim R.C., Victim E.Z, Victim D.D., and their associates and their family members, among others.

*(3)    Defendant SAAVEDRA Helped Secure a Warrant to Search Victim R.C.'s Residence Under False Pretenses*

Overt Act No. 10:    In or around September 2021, Iza introduced defendant SAAVEDRA to Iza's associate, Individual 1, at a party at Iza's mansion in Bel Air and said that Iza's associate had information for defendant.

Overt Act No. 11:    In or around September 2021, during the party at Iza's residence, Individual 1 told defendant SAAVEDRA, in Iza's presence, that: Individual 1 knew a significant drug dealer whom Individual 1 identified as Victim R.C.; Victim R.C. currently sold cocaine and fentanyl; and Victim R.C. stored illegal drugs at Victim R.C.'s residence in the Los Angeles area.

Overt Act No. 12:    In or around September 2021, during the party at Iza's residence, defendant SAAVEDRA had a private

9

conversation with Individual 1, and Individual 1 repeated similar statements to defendant.

Overt Act No. 13:   On September 24, 2021, defendant SAAVEDRA contacted a LASD narcotics detective and relayed the information he received from Individual 1 knowing that it likely would cause law enforcement to investigate Victim R.C., including by securing a warrant to search Victim R.C.'s residence.

Overt Act No. 14:   On September 24, 2021, during defendant SAAVEDRA's conversation with the narcotics detective, defendant SAAVEDRA deliberately concealed important information from the narcotics detective, namely, that: (a) defendant SAAVEDRA received the information he provided through a meeting facilitated by Iza, defendant SAAVEDRA's private client; (b) Iza was paying defendant SAAVEDRA approximately $100,000 per month via Saavedra & Associates; and (c) LASD Deputy 5 and LASD Deputy 6 recently had held a person at gunpoint at Iza's residence, after which Iza forced that person to send money to Iza.

Overt Act No. 15:   In or around September 2021 through October 2021, defendant SAAVEDRA and Iza spoke multiple times about a narcotics search warrant related to Victim R.C.

Overt Act No. 16:   In or around October 2021, the narcotics detective informed defendant SAAVEDRA that law enforcement had obtained and executed a warrant to search Victim R.C.'s residence and that officers did not find any illegal drugs inside the residence, which information defendant SAAVEDRA later relayed to Iza.

1       ***(4)   Defendant SAAVEDRA Falsified Information in a Search***

2            ***Warrant Affidavit to Secure a Warrant to Locate Victim***

3            ***E.Z.'s Phone***

4       <u>Overt Act No. 17:</u>   In or around late 2021, Iza told defendant

5   SAAVEDRA that Iza wanted to obtain a laptop containing a large amount

6   of cryptocurrency from Victim E.Z. so that Iza could access and

7   convert the cryptocurrency.

8       <u>Overt Act No. 18:</u>   In or around late 2021, Iza informed

9   defendant SAAVEDRA that he believed Victim E.Z.'s associate, Victim

10  D.D., may have been in possession of the laptop.

11      <u>Overt Act No. 19:</u>   On December 15, 2021, defendant SAAVEDRA,

12  LASD Deputy 7, Iza, and one of Iza's associates, Individual 2,

13  traveled to Victim D.D.'s residence in Orange County to confront

14  Victim D.D.

15      <u>Overt Act No. 20:</u>   On December 15, 2021, while outside Victim

16  D.D.'s residence, defendant SAAVEDRA identified himself as a law

17  enforcement officer, displayed his badge, and told Victim D.D. that a

18  stolen laptop was pinging at Victim D.D.'s residence.

19      <u>Overt Act No. 21:</u>   On December 15, 2021, Victim D.D. refused to

20  open the door and denied possessing a stolen laptop; soon thereafter,

21  the local police arrived at Victim D.D.'s residence, spoke with

22  defendant SAAVEDRA and Victim D.D., and stated there was nothing for

23  the police to do, after which defendant SAAVEDRA and his group

24  departed.

25      <u>Overt Act No. 22:</u>   In or around late 2021 into early 2022,

26  defendant SAAVEDRA and Iza continued to discuss Victim E.Z. and the

27  laptop with cryptocurrency on it, including Iza's frustration by the

28

1  lack of progress made by a private investigator whom Iza had paid

2  large sums of money to locate Victim E.Z. and the laptop.

3      Overt Act No. 23:    In or around late 2021 or early 2022,

4  defendant SAAVEDRA and Iza discussed and agreed that defendant

5  SAAVEDRA would use his position as a law enforcement officer to

6  obtain a search warrant for GPS location information associated with

7  Victim E.Z.'s telephone number to enable them to locate Victim E.Z.

8  and the laptop.

9      Overt Act No. 24:    On January 6, 2022, defendant SAAVEDRA

10  applied for and obtained a search warrant under false pretenses from

11  a Los Angeles County Superior Court judge authorizing law enforcement

12  officers to obtain GPS location information associated with several

13  telephone numbers, including Victim E.Z.'s telephone number.

14      Overt Act No. 25:    On January 6, 2022, in the sworn affidavit

15  supporting the search warrant application, defendant SAAVEDRA falsely

16  stated that Victim E.Z.'s telephone number was associated with a

17  suspect in a firearms investigation.

18      Overt Act No. 26:    In or around early January 2022, soon after

19  securing the illegally obtained search warrant for GPS location

20  information associated with Victim E.Z.'s phone, defendant SAAVEDRA

21  began receiving pings from the service provider for Victim E.Z.'s

22  phone, which provided the approximate location of Victim E.Z.'s

23  phone.

24      Overt Act No. 27:    In or around early January 2022, defendant

25  SAAVEDRA shared the pings with Iza.

26      Overt Act No. 28:    In or around early January 2022, defendant

27  SAAVEDRA traveled to a neighborhood in Los Angeles where the pings

28

12

showed Victim E.Z.'s phone was located and saw Victim E.Z. outside a residence in an apartment complex.

Overt Act No. 29:    In or around early January 2022, defendant SAAVEDRA notified Iza that he located Victim E.Z., and the two proceeded to surveil the apartment complex and residence where defendant SAAVEDRA had seen Victim E.Z.

Overt Act No. 30:    In or around January 2022, defendant SAAVEDRA learned that Iza had provided Victim E.Z.'s address to others, including to the private investigator whom Iza had engaged to locate Victim E.Z. and the laptop; thereafter, the private investigator and his team surveilled Victim E.Z. for several months.

**(5)    *Defendant SAAVEDRA Created a Fake Search Warrant to Scare and Secure Client 1 for Saavedra & Associates***

Overt Act No. 31:    In or around 2022, Iza told defendant SAAVEDRA that one of IZA's associates in the Los Angeles area, Client 1, who was involved in stealing large amounts of cryptocurrency, was interested in obtaining private security; that defendant and/or Saavedra & Associates could secure Client 1's business if Client 1 believed that Client 1 had something to worry about; and that Iza wanted to scare Client 1 by making Client 1 believe that law enforcement was investigating Client 1.

Overt Act No. 32:    In or around 2022, defendant SAAVEDRA and Iza discussed and agreed that defendant SAAVEDRA would prepare a fake search warrant relating to Client 1 and stating that Client 1 was under investigation.

Overt Act No. 33:    In or around 2022, defendant SAAVEDRA created a fake search warrant using an official LASD template that

named Client 1 and referenced, among other things, cryptocurrency and digital devices.

Overt Act No. 34:    In or around 2022, after completing the fake search warrant, defendant SAAVEDRA directed another LASD deputy, LASD Deputy 8, to print a copy of it and deliver it to Iza so that Iza could present it to Client 1.

Overt Act No. 35:    In or around 2022, after LASD Deputy 8 delivered the fake search warrant to Iza, Client 1 engaged Saavedra & Associates to provide security for Client 1 and paid defendant SAAVEDRA and/or Saavedra & Associates for security-related services through Iza, who acted as an intermediary.

1                              COUNT TWO

2                        [26 U.S.C. § 7206(1)]

3        On or about April 18, 2022, in San Bernardino County, within the

4   Central District of California, and elsewhere, defendant ERIC CHASE

5   SAAVEDRA willfully made and subscribed to a materially false U.S.

6   Individual Income Tax Return, Form 1040, for the calendar year 2021,

7   which was verified by a written declaration from defendant SAAVEDRA

8   that it was made under the penalties of perjury, and which defendant

9   SAAVEDRA filed or caused to be filed with the Internal Revenue

10  Service, knowing the tax return was not true and correct as to every

11  material matter contained therein, in that defendant SAAVEDRA knew

12  that he failed to report on the tax return approximately $373,146 in

13  income.

1        FORFEITURE ALLEGATION ONE

2       [18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

3       1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal

4  Procedure, notice is hereby given that the United States of America

5  will seek forfeiture as part of any sentence, pursuant to Title 18,

6  United States Code, Section 924(d)(1), and Title 28, United States

7  Code, Section 2461(c), in the event of the defendant's conviction of

8  the offense set forth in Count One of this Information.

9       2.   Any defendant so convicted shall forfeit to the United

10  States of America the following:

11          (a)   All right, title, and interest in any firearm or

12  ammunition involved in or used in any such offense; and

13          (b)   To the extent such property is not available for

14  forfeiture, a sum of money equal to the total value of the property

15  described in subparagraph (a).

16       3.   Pursuant to Title 21, United States Code, Section 853(p),

17  as incorporated by Title 28, United States Code, Section 2461(c), the

18  convicted defendant shall forfeit substitute property, up to the

19  value of the property described in the preceding paragraph if, as the

20  result of any act or omission of said defendant, the property

21  described in the preceding paragraph or any portion thereof (a)

22  cannot be located upon the exercise of due diligence; (b) has been

23  transferred, sold to, or deposited with a third party; (c) has been

24  placed beyond the jurisdiction of the court; (d) has been

25  substantially diminished in value; or (e) has been commingled with

26  other property that cannot be divided without difficulty.

27

28

16

1                        FORFEITURE ALLEGATION TWO

2              [26 U.S.C. § 7301 and 28 U.S.C. § 2461(c)]

3         1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal

4    Procedure, notice is hereby given that the United States of America

5    will seek forfeiture as part of any sentence, pursuant to Title 26,

6    United States Code, 7301, and Title 28, United States Code, Section

7    2461(c), in the event of the defendant's conviction of the offense

8    set forth in Count Two of this Information.

9         2.    The defendant, if so convicted, shall forfeit to the United

10   States of America the following:

11              a.    Any property sold or removed by the defendant in fraud

12   of the internal revenue laws, or with design to avoid payment of such

13   tax, or which was removed, deposited, or concealed, with intent to

14   defraud the United States of such tax or any part thereof;

15              b.    All property manufactured into property of a kind

16   subject to tax for the purpose of selling such taxable property in

17   fraud of the internal revenue laws, or with design to evade the

18   payment of such tax;

19              c.    All property whatsoever, in the place or building, or

20   any yard or enclosure, where the property described in subsection (a)

21   or (b) is found, or which is intended to be used in the making of

22   property described in subsection (a), with intent to defraud the

23   United States of tax or any part thereof, on the property described

24   in subsection (a);

25              d.    All property used as a container for, or which shall

26   have contained, property described in subsection (a) or (b);

27              e.    Any property (including aircraft, vehicles, vessels,

28   or draft animals) used to transport or for the deposit or concealment

                                    17

of property described in subsection (a) or (b), or any property used to transport or for the deposit or concealment of property which is intended to be used in the making or packaging of property described in subsection (a); and

        f.    To the extent that such property is not available for forfeiture, a sum of money equal to the total value of the property described in this paragraph.

    3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

///

///

1  substantially diminished in value; or (e) has been commingled with

2  other property that cannot be divided without difficulty.

3                                    E. MARTIN ESTRADA
                                     United States Attorney
4

5

6                                    LINDSEY GREER DOTSON
                                     Assistant United States Attorney
7                                    Chief, Criminal Division

8                                    CASSIE D. PALMER
                                     Assistant United States Attorney
9                                    Chief, Public Corruption and
                                     Civil Rights Section
10

11                                   DANIEL J. O'BRIEN
                                     Assistant United States Attorney
12                                   Senior Litigation Counsel
                                     Public Corruption and
13                                   Civil Rights Section

14                                   J. JAMARI BUXTON
                                     Assistant United States Attorney
15                                   Public Corruption and
                                     Civil Rights Section
16

17                                   MAXWELL COLL
                                     Assistant United States Attorney
18                                   Cyber and Intellectual Property
                                     Crimes Section
19

20

21

22

23

24

25

26

27

28